# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOSTER POULTRY FARMS, INC., ) | CIV-F-06-0680 AWI SMS |
| ) Plaintiff, ) | ORDER RE: MOTION TO REMAND |
| v. ) | |
| INTERNATIONAL BUSINESS ) MACHINES CORPORATION and ) AVNET, INC., ) | |
| ) Defendants. ) | (Docs. 5, 6, and 8) |

Plaintiff Foster Poultry Farms has made a motion to remand the case to state court and for associated fees and costs. Defendant Avnet has made separate motions to dismiss and to transfer venue. Based on the reasoning explained herein, Foster's motion to remand is granted, but fees and costs are denied.

**I. History**

For a number of years, Foster Poultry Farms, Inc. ("Foster") and International Business Machines, Corp. ("IBM") signed contracts in which Foster prepaid IBM for computer hardware and software maintenance services to be rendered. These contracts gave Foster the option of terminating various services in return for a prorated refund. While the contracts named Foster and IBM as the only parties, it referred to an "IBM Business Partner" through which monetary payments were to be made by both parties. Foster began using Amherst Technologies

("Amherst") as the IBM Business Partner in May 2004.  On December 23, 2004 Foster signed a contract with IBM in which Foster prepaid IBM (through Amherst) $1,198,668.48 for 36 months worth of such services.  On July 20, 2005, Amherst filed for bankruptcy in the District of New Hampshire (Bankruptcy Petition No. 05-12831 JMD).  Since the bankruptcy, Foster has used Avnet, Inc. ("Avnet") as the IBM Business Partner.  Since December 23, 2004, Foster has exercised the option of terminating various services 13 times.  The parties have not specified whether any of the 13 refund requests occurred prior to July 20, 2005.  Foster claims that it is entitled it to approximately $270,500 plus interest ("Contested Money").  IBM has transferred the Contested Money to Avnet.  Avnet refuses to turn the Contested Money over to Foster without approval from the bankruptcy court overseeing the Amherst Bankruptcy.

Foster filed suit against Avnet and IBM in state court on May 1, 2006 alleging breach of contract, conversion, unjust enrichment/quasi-contract, resulting trust, and constructive trust. Doc. 2, Ex. 1, Complaint.  Avnet filed a notice of removal on June 1, 2006, purporting to remove only those claims and causes of action alleged against Avnet, Inc." under 28 U.S.C. §1441 and 28 U.S.C. §1452. Doc. 2, Notice of Removal, at 4:5-6.  On June 12, 2006, Avnet made a motion to transfer venue to the District of New Hampshire. Doc. 5.  On June 15, 2006, Avnet made a separate motion to dismiss under Fed. R. Civ. Proc. 12(b)(7), failure to join a necessary party. Doc. 6.  On the same day, Foster filed this motion for remand based on 28 U.S.C. §1447(c), lack of subject matter jurisdiction and/or procedural defect and for costs associated with remand. Doc. 7.  On June 29, 2006, IBM filed a joinder in Avnet's motions to transfer venue and to dismiss. Doc. 12.  IBM later clarified that it notified Avnet prior to June 1, 2006 that IBM consented to removal. Doc. 18.  Foster and Avnet have filed oppositions and replies to opposing parties' motions.  The court took the matters under submission without oral argument. Doc. 17.

## II. Legal Standards

"If at any time prior to judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. §1447(c).  "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed

against removal jurisdiction." <u>Prize Frize Inc. v. Matrix Inc.</u>, 167 F.3d 1261, 1265 (9th Cir. 1999); <u>Emrich v. Touche Ross & Co.</u>, 846 F.2d 1190, 1195 (9th Cir. 1988).  There is a strong presumption against removal. <u>Gaus v. Miles, Inc.</u>, 980 F. 2d 564, 566 (9th Cir. 1992).  If there is any doubt as to the right of removal in the first instance, "federal jurisdiction must be rejected." <u>Duncan v. Stuetzle</u>, 76 F.3d 1480, 1485 (9th Cir. 1996).

### III. Discussion

The heart of Foster's motion is the assertion that there is no subject matter jurisdiction in this case.  Avnet argues that the case belongs in federal court on the basis of both bankruptcy jurisdiction and diversity jurisdiction.

**A. Bankruptcy Jurisdiction**

Avnet sought removal "pursuant to 28 U.S.C. §§ 1441 and 1446." Doc. 2, Notice of Removal, at 1:20.  These provisions generally govern removal of cases where jurisdiction is founded on federal question and diversity.  Avnet then directly cited to 28 U.S.C. §1452, stating "Amherst's filing of a voluntary petition under Title 11 of the United States Code provides exclusive jurisdiction to adjudicate those claims arising against Amherst and/or the property of its estate....The State Court causes of action and all causes of action related to the alleged transfers from Amherst to IBM, Avnet, or both, directly relate to and arise out of Amherst's Title 11 Proceeding in the New Hampshire Bankruptcy Court." Doc. 2, Notice of Removal, at 2:26-3:24.  Though the notice is styled as removal pursuant to 28 U.S.C. §1441, the court will consider whether the case was properly removed under 28 U.S.C. §1452 which provides, "A party may remove any claim or cause of action in a civil action...to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."

Bankruptcy jurisdiction under 28 U.S.C. §1334(b) refers to three distinct categories: cases "arising under," "arising in," and "related to" a bankruptcy proceeding under Title 11 of the U.S. Code.  "Arising under" refers to "those proceedings that involve a cause of action created or

determined by a statutory provision of title 11....The meaning of 'arising in' proceedings is less clear, but seems to be a reference to those 'administrative' matters that arise only in bankruptcy cases. In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." In re Wood, 825 F.2d 90, 96-97 (5th Cir. 1987).  The Ninth Circuit applies the Pacor test for ascertaining "related to" jurisdiction:

> 'The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'
>
> The Fourth, Fifth and Eighth Circuits have adopted the Pacor definition without modification. The Second, Sixth and Seventh Circuits have adopted definitions similar to the one announced in Pacor, but their formulations may deny jurisdiction in cases where the dispute is 'conceivably' related to the bankruptcy estate, but that relationship is remote....We therefore adopt the Pacor definition quoted above. We reject any limitation on this definition; to the extent that other circuits may limit jurisdiction where the Pacor decision would not, we stand by Pacor.

In re Fietz, 852 F.2d 455, 457 (9th Cir. 1988), quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984).

**1. Well-Pleaded Complaint Rule And Bankruptcy**

Foster argues the well-pleaded complaint rule interposes to preclude examination of Amherst's involvement since the complaint makes no claims against that third party. Doc. 9, Brief, at 5:6-20.  Unfortunately, whether the rule applies to bankruptcy jurisdiction is not well settled.

**a. Definition Of The Well-Pleaded Complaint Rule**

The well-pleaded complaint rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint;" courts look to what "necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything in anticipation of avoidance of defenses which it is thought the

**4**

defendant may interpose." California v. United States, 215 F.3d 1005, 1014 (9th Cir. 2000). Accordingly, "a case may not be removed on the basis of a federal defense...even if the defense is anticipated in the plaintiff's complaint and both parties concede that the federal defense is the only question truly at issue." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).

Recently, the U.S. Supreme Court held that a counterclaim can not be the basis of federal jurisdiction. Holmes Group, Inc. v. Vornado Air Circulation Sys., 535 U.S. 826, 830 (2002). There is a longstanding circuit split on the related issue of whether third party defendants can remove a case to federal court based on the substance of a third party claim.  The Sixth, Seventh, and Eighth Circuits have held that third party defendants can not remove on the basis of 28 U.S.C. §1441(c). First Nat'l Bank of Pulaski v. Curry, 301 F.3d 456, 465 (6th Cir. 2002) (concluding the same holds true for §1441(a) as well); Thomas v. Shelton, 740 F.2d 478, 488 (7th Cir. 1984); Lewis v. Windsor Door Co., Div. of Ceco Corp., 926 F.2d 729, 733 (8th Cir. 1991).  The Fifth Circuit has held that "a third-party indemnity defendant may remove a case to federal court pursuant to §1441(c)." Texas by & through Board of Regents of the Univ. of Tex. Sys. v. Walker, 142 F.3d 813, 816 (5th Cir. 1998); Accord N. Natural Gas Co. v. Sheerin, SA-03-CA-304-RF, 2003 U.S. Dist. LEXIS 20049, at *14 (W.D. Tex., Oct. 20, 2003) (third party defendant removed, "in determining relatedness to the Enron bankruptcy, the Court examines only the third party claims against Lay").  The Third Circuit has noted the divide but has expressed no opinion. Cook v. Wikler, 320 F.3d 431, 437 (3rd Cir. 2003).  "The Ninth Circuit has yet to reach the 'interesting question' whether third-party defendants are 'defendants' for the purposes of section 1441 and thus may remove cases to federal court. However, the great weight of district court authority within this circuit indicates that third-party defendants lack such a right." Ciolino v. Ryan, NO. C03-1396 TEH, 2003 U.S. Dist. LEXIS 11639, at *9-10 (N.D. Cal., July 9, 2003), citing O'Halloran v. University of Washington, 856 F.2d 1375, 1381 (9th Cir. 1988) ("we need not address the issue whether a third-party defendant can base its petition for removal on an alleged federal question presented in the complaint between the original parties").

Acceptance of the Fifth Circuit's position would counsel allowing a defendant/third party plaintiff to remove a case based on the third party claim. See Wells Fargo Bank Northwest, N.A.

v. TACA Int'l Airlines, S.A., 314 F. Supp. 2d 195, 198 (S.D.N.Y. 2003) (in case where removal was challenged after final judgment, "defendants asserted federal claims against Wells Fargo and another party, which claims were sufficient to invoke federal jurisdiction").  Other courts disagree in the wake of the U.S. Supreme Court's opinion in Holmes. Adkins v. Ill. Cent. R.R. Co., 326 F.3d 828, 836 (7th Cir. 2003) ("we must consider whether the existence of a third-party complaint affects the court's subject matter jurisdiction over the original action. We conclude that it does not....The third-party claim might, however, permit the court to exercise supplemental jurisdiction over the original case, if everything arises out of the same constitutional case or controversy"); Cross Country Bank v. McGraw, 321 F. Supp. 2d 816, 820-21 (S.D. W. Va. 2004) ("Federal question jurisdiction exists only if the plaintiff's complaint states a federal cause of action; permitting a defendant to create federal subject matter jurisdiction by casting a third-party complaint in terms of a federal cause of action would impermissibly expand the jurisdiction of the federal courts beyond that conferred by Congress"); see also Wright, Miller & Kane, 6 Federal Practice and Procedure §1444 (2nd ed. 1990) ("when there is no subject-matter jurisdiction over the original action between plaintiff and defendant, it cannot be created by adding a third-party claim over which there is jurisdiction").  In at least one case, the Ninth Circuit, relying on inter alia the well-pleaded complaint rule, disallowed removal by defendant/third party plaintiff based on jurisdiction over the Resolution Trust Corporation contained in the third party complaint. People by Lungren v. Keating, 986 F.2d 346, 347-48 (9th Cir. 1993).

**b. Jurisdictional Statutes To Which The Well-Pleaded Complaint Rule Applies**

Whether the well-pleaded complaint rule applies to different categories of federal jurisdiction is another unclear matter.  In 1992, the U.S. Supreme Court stated "Respondents erroneously invoke that rule outside the realm of statutory 'arising under' jurisdiction, i.e., jurisdiction based on 28 U.S.C. §1331, to jurisdiction based on a separate and independent jurisdictional grant, in this case, the Red Cross Charter's 'sue and be sued' provision [ 36 U.S.C. §2]. The 'well-pleaded complaint' rule applies only to statutory 'arising under' cases." American

Nat'l Red Cross v. S.G., 505 U.S. 247, 258 (1992), citing Verlinden B. V. v. Central Bank of Nigeria, 461 U.S. 480, 494 (1983) (28 U.S.C. §1331 not coterminous with Article III).  The term "i.e." (instead of "e.g.") limits the "arising under" reference to 28 U.S.C. §1331.

Previous decisions have applied the well-pleaded complaint rule to other jurisdictional statutes. See Robinson v. Michigan Consol. Gas Co., 918 F.2d 579, 584 (6th Cir. 1990) ("The Supreme Court has long held that a cause of action satisfies the 'arising under' requirement of section 1331 and the various other jurisdictional statutes employing identical language, only where the plaintiff's well-pleaded complaint raises an issue of federal law").  As late as 1988, the U.S. Supreme Court applied the rule to a case involving patent jurisdiction under 28 U.S.C. §1338:

> we held long ago that in order to demonstrate that a case is one 'arising under' federal patent law the plaintiff must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws. Our cases interpreting identical language in other jurisdictional provisions, particularly the general federal-question provision, 28 U.S. C. §1331, have quite naturally applied the same test. A district court's federal-question jurisdiction, we recently explained, extends over only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law

Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 807-808 (1988), citations omitted.

Subsequent cases have not given full effect to the plain meaning of American Nat'l Red Cross and have continued to apply the well-pleaded complaint rule when  dealing with various jurisdictional statutes which use the term "arising under" (or minor variations of this key phrase). For example, the Ninth Circuit has applied the well-pleaded complaint rule to the independent grant of jurisdiction in 12 U.S.C. § 1441a(l) (Resolution Trust Corporation jurisdiction, "Notwithstanding any other provision of law, any civil action, suit, or proceeding to which the Corporation is a party shall be deemed to arise under the laws of the United States") while simultaneously citing to American Nat'l Red Cross for another holding. People by Lungren v. Keating, 986 F.2d 346, 348 (9th Cir. 1993).  One Eastern District opinion has explained:

> the City contends that the well-pleaded complaint rule does apply here since the City bases the propriety of removal, not on Section 1331, but on the "separate" and "independent" jurisdictional grant of Section 113(b) of CERCLA [42 U.S.C. §9613]. As support, the City cites [American Nat'l Red Cross ] wherein the United States Supreme Court found that the well-pleaded complaint rule had no applicability in that case because

jurisdiction was based upon the Red Cross Charter's "sue and be sued" provision, a "separate and independent jurisdictional grant," not on Section 1331's statutory "arising under" jurisdiction. American Nat'l Red Cross is inapposite. It did not involve a jurisdictional grant under a federal statute. Additionally, the City's argument ignores the Ninth Circuit's recent decision in ARCO Environmental Remediation. L.L.C. v. Dep't of Health & Environmental Quality of the State of Montana, 213 F.3d 1108, 1113-14 (9th Cir. 2000) which specifically considered Section 113(b)'s jurisdictional grant and applied the well-pleaded complaint rule.

Lehman Bros., Inc. v. City of Lodi, 333 F. Supp. 2d 895, 900 n.11 (E.D. Cal. 2004) (CERCLA jurisdiction, "the United States district courts shall have exclusive original jurisdiction over all controversies arising under this Act"). "[T]he well-pleaded complaint rule analysis of section 1331 applies equally to the assertion of jurisdiction here under [28 U.S.C.] section 1362, and that there is no federal jurisdiction in this case." Penobscot Nation v. Georgia-Pacific Corp., 106 F. Supp. 2d 81, 86 (D. Me. 2000); 28 U.S.C. §1362 ("The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States").

**c. Cases Expressly Discussing Application Of Rule To Bankruptcy Jurisdiction**

The only court which has decisively relied on American Nat'l Red Cross as the basis for declining to apply the rule on a jurisdictional statute other than 28 U.S.C. §1331 is In re Enron Corp. Secs., Derivative & ERISA Litig., NO. H-03-1558, 2005 U.S. Dist. LEXIS 4494, at *41 (S.D. Tex., Feb. 16, 2005) ("The well-pleaded complaint rule is not applicable in 'related to' bankruptcy removal cases"). As far as this court's research has revealed, In re Enron Corp. Secs. appears to be the only case that has flatly stated the rule does not apply to bankruptcy. The vast majority of cases discussing the matter have come to the opposite conclusion. E.g. In re Kevco Inc., 113 Fed. Appx. 29, 31 (5th Cir. 2004)[1] (in response to appellant's claim that bankruptcy court erred in not applying well pleaded complaint rule, found no error as bankruptcy jurisdiction

---

[1] 5th Cir. R. 47.5.4 "Unpublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, abuse of the writ, notice, sanctionable conduct, entitlement to attorney's fees, or the like). An unpublished opinion may, however, be persuasive."

clear based on face of complaint); Malesovas v. Sanders, No. H-04-3122, 2005 U.S. Dist. LEXIS 42344 (S.D. Tex. May 16, 2005); Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co., 357 F. Supp. 2d 529, 534 (E.D.N.Y. 2005)[2]; In re LJM2.Co-Investment, L.P., 319 B.R. 495, 500 (Bankr. N.D. Tex. 2005); Liberty Mut. Ins. v. Lone Star Indus., 313 B.R. 9, 16 (D. Conn. 2004); In re Foxmeyer Corp., 230 B.R. 791, 795 (Bankr. N.D. Tex. 1998); Yangming Marine Transport Corp. v. Electri-Flex Co., 682 F. Supp. 368, 370 (N.D. Ill. 1987) (seminal case, applying rule to "related to" jurisdiction); see also 16 J. Moore et al., Moore's Federal Practice §107.15[8][b] (3rd ed. 2006). While applying the well-pleaded complaint rule, one court has admitted that it "does not apply as smoothly to 'related to' jurisdiction...The nature of related jurisdiction requires courts to look beyond the law under which claims arise to determine the potential impact of the litigation on the estate and its creditors." In re Conseco, Inc., 318 B.R. 425, 431 n.1 (Bankr. N.D. Ill. 2004).

The most complete discussion justifying application of the rule to bankruptcy jurisdiction explicitly based its conclusion on U.S. Supreme Court precedent in Rivet v. Regions Bank, 522 U.S. 470 (1998):

> Before examining whether the defendants have established that the plaintiffs' complaint raises a bankruptcy question, the court addresses the defendants' contention that the well-pleaded complaint test of Rivet does not apply to removals under § 1334. In Rivet, removal had been premised on 28 U.S.C. §§ 1331 and 1441(a) and (b). The removing party invoked federal jurisdiction based on a claim "arising under" the Constitution, laws or treaties of the United States. The defendants observe that a removal based on bankruptcy jurisdiction invokes a broader definition of a federal question. Removal under 28 U.S.C. § 1452(a) turns on a federal question under 28 U.S.C. § 1334. Section 1334 provides for bankruptcy jurisdiction based on a claim "arising under" the Bankruptcy

---

[2] Studebaker is the case most factually and legally analogous to the case at hand. The defendant rented equipment from a third party entity. The third party assigned all revenues from that contract to the plaintiff and then filed for bankruptcy. The plaintiff filed suit against the defendant for breach of contract for failing to make rental payments. The defendant removed the case based on "related to" jurisdiction (among other jurisdictional bases), arguing the funds plaintiff was seeking might belong to the entity in bankruptcy. Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co., 357 F. Supp. 2d 529, 534 (E.D.N.Y. 2005). The court applied the rule and gave no weight to the defendant's allegations, stating "Plaintiff has not alleged that NorVergence [entity in bankruptcy] is legally entitled to collect those payments from Defendant." Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co., 357 F. Supp. 2d 529, 535 (E.D.N.Y. 2005).

> Code, applying the same definition of § 1331 ("arising under" the Constitution, laws or treaties of the United States), but also provides for bankruptcy jurisdiction based on a claim "arising in or related to" a case under the Bankruptcy Code. 28 U.S.C. § 1334 (a) and (b). Because of this broader jurisdictional grant, the defendants argue that the well-pleaded complaint rule should not apply. Rather, the defendants argue that the federal question "arising in or related to" a bankruptcy case may be premised on pleadings beyond the complaint.
>
> The Supreme Court instructs otherwise. In Rivet, the removing party asserted an affirmative-defense of preclusion. The preclusion defense was based on prior bankruptcy court orders. Although the removing party cited §1331, and not §1334, for federal jurisdiction, the case involved the consideration of prior bankruptcy court orders. The Fifth Circuit affirmed the district court's denial of a motion to remand. The Supreme Court reversed. The Court considered whether preclusion based on a federal court order became subsumed by the complaint. The Court concluded that it did not. Preclusion, even if based on a federal court order, is an affirmative defense and, as such, cannot be used to create a federal question....
>
> This court recognizes that the Supreme Court referenced removal under § 1441(b), but it is not the function of this court to distinguish Rivet on that basis. The Supreme Court recognized that exceptions existed to the well-pleaded complaint rule. For example, when a claim has been preempted by federal law, the claim is considered, from its inception, a federal claim, and therefore arises under federal law. Under § 1334(b), federal courts have 'original but not exclusive jurisdiction' of claims 'arising in or related to' a bankruptcy case. The preemption exception therefore does not apply.

In re LJM2.Co-Investment, L.P., 319 B.R. 495, 500-501 (Bankr. N.D. Tex. 2005), citations omitted.

This court respectfully disagrees with LJM2's interpretation. Rivet's central holding states, "In sum, claim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal under § 1441(b). Such a defense is properly made in the state proceedings, and the state courts' disposition of it is subject to this Court's ultimate review." Rivet v. Regions Bank, 522 U.S. 470, 478 (1998). The crux of LJM2's interpretation of Rivet appears to be as follows: (1) defendant removed the case, arguing that an order from bankruptcy court had preclusive effect; (2) U.S. Supreme Court applied the well-pleaded complaint, finding preclusion a defensive plea; (3) therefore, the rule applies to bankruptcy jurisdiction. Statement 3 is not a conclusion mandated by statements 1 and 2. The U.S. Supreme Court never considered bankruptcy jurisdiction in Rivet, only the preclusive effect of federal judgments. There is no indication the parties ever raised the issue or presented evidence of jurisdiction under 28 U.S.C. §1334 in the course of litigation. See Rivet v. Regions Bank, Civ. No. 95-0426, 1995 U.S. Dist. LEXIS 5670 (E.D. La., Apr. 20, 1995); Rivet v. Regions Bank, 108 F.3d 576 (5th Cir. 1997)

(discussing supplemental jurisdiction and res judicata in bankruptcy context but not bankruptcy jurisdiction).

### d. Relevant Cases From The Ninth Circuit

Upon review, this court has not been able to find any explicit discussion regarding application of the well-pleaded complaint rule to bankruptcy jurisdiction in the Ninth Circuit. However, there is case law that is inconsistent with such application. As discussed above, the Ninth Circuit has found, in the non-bankruptcy context, that a third party indemnification claim may not be the basis for removal. See People by Lungren v. Keating, 986 F.2d 346, 347-48 (9th Cir. 1993). That is, the well-pleaded complaint rule precludes examination of a third party claim in determining whether federal jurisdiction exists. Nevertheless, a court in the Central District has held that 28 U.S.C. §1452 removal was justified based on a party in bankruptcy's contractual duty to indemnify a defendant against potential damages in the case. See Carpenters Pension Trust for S. Cal. v. Ebbers, 299 B.R. 610, 613 (C.D. Cal. 2003) ("agreements here are sufficient to trigger federal subject matter jurisdiction, even if the indemnification is not automatic"). In a non-removal context, another opinion found "a defendant's claim against a debtor for contractual indemnity gives rise to 'related to' bankruptcy jurisdiction." In re Enron Corp., 296 B.R. 505, 508 (C.D. Cal. 2003). In contrast, where there is no written indemnification agreement (only an argument that indemnification could be sought), "related to" jurisdiction will not lie. See Pacor, Inc. v. Higgins, 743 F.2d 984, 995 (3rd Cir. 1984); In re Asbestos Litig., CV No:01-1790-PA, 2002 U.S. Dist. LEXIS 3083, at *11 (D. Or., Feb. 1, 2002) ("hypothetical indemnity and contribution claims...with almost no factual support" insufficient).

These bankruptcy cases do not discuss the well-pleaded complaint rule, and the opinions do not explicitly state in what form the indemnification claims/defenses were brought to the attention of the court. Nevertheless, it is clear the issues giving rise to jurisdiction were raised by defendants and not plaintiffs. In effect, some district courts in the Ninth Circuit have not applied the well-pleaded complaint rule when faced with claims of bankruptcy jurisdiction. Even had the rule not been raised by the parties, the courts had an affirmative duty to consider the limits of

11

subject matter jurisdiction.[3]

### e. The Well Pleaded Complaint Does Not Apply To Bankruptcy Jurisdiction

Though the near consensus of court cases that have expressly examined the issue is that the well-pleaded complaint rule applies to bankruptcy jurisdiction, review of the broader constellation of related decisions counsels otherwise.  The weight of the case law suggests that the well-pleaded complaint rule only applies when dealing with an "arising under" jurisdictional statute.  Title 28 U.S.C. §1334(b) provides for federal jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11," covering a broader field than the "arising under" jurisdictional statutes.  On this basis, the court declines to apply the well-pleaded complaint rule to cases brought to federal court under bankruptcy jurisdiction.

### 2. Substantive Bankruptcy Jurisdiction Analysis

Avnet argues that the removed claims constitute "core proceedings." Doc. 13, Opposition, at 3:4-22.  Core proceedings are considered synonymous with "arising under" and "arising in" jurisdiction. See 28 U.S.C. §157(b) ("Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11"); In re Wood, 825 F.2d 90, 97 (5th Cir. 1987) ("section 157 apparently equates core proceedings with the categories of 'arising under' and 'arising in' proceedings"); In re Harris Pine Mills, 44 F.3d 1431, 1435 (9th Cir. 1995) ("claims that arise under or in Title 11 are

---

[3]On first impression, one might sense some dissonance between the conclusions drawn from court silence in these cases and from silence in Rivet.  The situations are not parallel.  In these cases, courts risked exceeding their jurisdiction.  Rivet involves the converse: the risk of declining jurisdiction when it actually exists under an alternate theory.  While a court must vigorously guard sua sponte against adjudicating a case in which it does not have subject matter jurisdiction, it does not keep vigil regarding the non-exercise of legitimate jurisdiction. See Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 810 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced").  Without an adequate record, courts can not speculate on theories that might save jurisdiction. Cf. Adkins v. Ill. Cent. R.R. Co., 326 F.3d 828, 836 (7th Cir. 2003).

deemed to be 'core' proceedings, while claims that are related to Title 11 are 'noncore' proceedings"). Avnet cites to a Ninth Circuit decision that states "because an action to obtain property of the estate would necessarily involve a determination regarding the nature and extent of property of the estate, the action would also be a matter concerning the administration of the estate, and, therefore, a core proceeding." In re Silva, 185 F.3d 992, 994 (9th Cir. 1999). However, the Ninth Circuit panel found the claims to be core proceedings "Because the Trustee's Complaint specifically pleaded that First Fidelity turn over the account under the name Milano-Silva Inc. to the Estate because that account was in fact the property of the Estate." In re Silva, 185 F.3d 992, 994 (9th Cir. 1999). In Silva, the representative of the bankrupt estate made an affirmative claim in a judicial proceeding to the asset at issue. In this case, Avnet has not shown that Amherst has made any claim to the Contested Money.

In examining whether jurisdiction exists, the removing party must provide some evidence that there is a nexus between the case and the bankruptcy estate. See N. Natural Gas Co. v. Sheerin, SA-03-CA-304-RF, 2003 U.S. Dist. LEXIS 20049, at *20-21 (W.D. Tex., Oct. 20, 2003) ("Tidelands questions that Lay [removing party] has proffered sufficient evidence to the Court in the form of copies of private indemnity agreements between Lay and Enron [entity in bankruptcy] or of insurance policies upon which he relies in order to assert that this cause is related to a bankruptcy proceeding, and Tidelands reminds the Court of Lay's burden in the matter. The Court finds that evidence was submitted indicating both the D&O insurance policy that covered officers and directors of Enron and the Amended and Restated Articles of Incorporation of Enron Oregon Corp. and the Merger of Enron Oregon with Enron Delaware, both providing the articles relating to indemnification and contribution. The Court does not find, nor have the moving parties indicated with specificity, any provision within these documents undermining Lay's potential claim for indemnification, contribution or D&O coverage against the Enron estate"); In re Asbestos Litig., 271 B.R. 118, 123-24 (D. W. Va. 2001) ("affidavit by a former employee" and copy of vague indemnity clause insufficient proof to establish "related to" jurisdiction based on enforceable indemnification)

Foster points out that Avnet has not provided any evidence to support its argument that

Amherst has a claim to any part of the Contested Money. Doc. 9, Brief, at 2:26-28; Doc. 16, Reply, at 3:15-4:1.  The only documents in the record consist of e-mails between Foster and Avnet (negotiating over the Contested Money) and the 38 page docket report of the Amherst bankruptcy. Doc. 2, Ex. A.  Avnet has not explained how the docket report shows anything aside from the fact that Amherst is in Chapter 7 bankruptcy.  The court declines to go through, item by item, searching for entries that might demonstrates some relevance to the motion. See Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001) ("requiring the district court to search the entire record, even though the adverse party's response does not set out the specific facts or disclose where in the record the evidence for them can be found, is unfair....If a district court must examine reams or file cabinets full of paper looking for genuine issues of fact, as though the judge were the adverse party's lawyer, an enormous amount of time is taken away from other litigants").  All Avnet has done is to state "Avnet believes, in an abundance of caution, that Amherst...may be entitled to an undetermined percentage of the [Contested Money]." Doc. 5, Avnet's Motion to Transfer Venue, at 3:10-13.

      Indeed, Avnet has not articulated a clear theory for how any of the Contested Money belongs to Amherst.  First, it is unclear when Foster exercised its 13 options to terminate, before the bankruptcy when Amherst was the IBM Business Partner, or afterwards when Amherst had been replaced by Avnet.  Second, Avnet has not explained how the contract or agreement between Amherst and IBM gives rise to any potential claims given Foster's exercise of its options to terminate, whether an IBM Business Partner is paid a flat fee or earns commissions based on the volume of money that flows between IBM and its clients.  Third, Avnet has not explained why Amherst might seek the Contested Money as opposed to a separate payment from IBM.  Avnet has not explained if IBM pays the IBM Business Partner's fees as a separate account or if these fees are commingled with funds that pass through the IBM Business Partner's hands.

      Notwithstanding the non-application of the well-pleaded complaint rule, removing party Avnet has the burden of affirmatively establishing subject matter jurisdiction.  Avnet has not met its burden; based on the evidence and factual detail presented, the court can not conclude that this

case is related to Amherst's bankruptcy.

**B. Diversity Jurisdiction**

Foster admits that "there is complete diversity between the parties" for diversity jurisdiction purposes. Doc. 9, Brief, at 8:6. In a twist, Foster argues that Avnet did not remove based on diversity jurisdiction, but solely based on bankruptcy jurisdiction. Doc. 9, Brief, at 8:6-7.

In the moving papers, Avnet asserts jurisdiction on the basis of diversity. Doc. 13, Opposition, at 2:16-3:3. There are a few facts which indicate some initial intent to raise diversity jurisdiction. First, Avnet marked the box, "4. Diversity" as the "Basis of Jurisdiction" on the civil cover sheet form. Doc. 1. However, the only other choices given were "1. U.S. Government Plaintiff", "2. U.S. Government Defendant", and "3. Federal Question"; there is no "Arising in or Related to Bankruptcy" option on the form. As Foster points out, the civil cover sheet "requirement is solely for administrative purposes, and matters appearing only on the civil cover sheet have no cognizable effect in the action." Eastern District Local Rule 3-200. Second, Avnet formally sought removal "pursuant to 28 U.S.C. §§ 1441 and 1446" in its notice of removal. Doc. 2, Notice of Removal, at 1:20. Bankruptcy removal is pursuant to 28 U.S.C. §1452. Avnet also stated: "Avnet is a New York corporation with its principal place of business located in Arizona. By Plaintiff's own admission, Plaintiff is a California corporation with its principal place of business located in California, and Plaintiff is thus a citizen of the State of California pursuant to 28 U.S.C. §1332(c)(1). Plaintiff has requested the award of at least $270,500 in compensatory damages or restitution of the same amount, plus punitive damages, interest and costs." Doc. 2, Notice of Removal, at 2:18-25. The reference to 28 U.S.C. §1332 and statement of the amount in controversy sufficiently raise the inference of diversity jurisdiction.

**1. Partial Removal**

Avnet stated "This Notice of Removal has been filed only for the purpose of removing those claims and causes of action alleged against Avnet, Inc." Doc. 2, Notice of Removal, at 4:4-

6. Title 28 U.S.C. §1441 provides for removal of "civil action[s]." As the former Fifth Circuit has noted, 28 U.S.C. §1441(c) "explicitly provid[es] for removal of 'entire case' when otherwise removable claims are joined with a 'separate and independent' non-removable claim." Arango v. Guzman Travel Advisors Corp., 621 F.2d 1371, 1375 (5th Cir. 1980). "Much confusion and embarrassment, as well as increase in the cost of litigation, had been found to result from the provision in the former Act permitting the separation of controversies in a suit, removing some to the federal court, and leaving others in the state court for determination. It was often convenient to embrace in one suit all the controversies which were so far connected by their circumstances as to make all who sue, or are sued, proper, though not indispensable parties. Rather than split up such a suit between courts of different jurisdictions, Congress determined that the removal of the separable controversy to which the judicial power of the United States was, by the Constitution, expressly extended, should operate to transfer the whole suit to the federal court." Murphy v. Kodz, 351 F.2d 163, 167 (9th Cir. 1965), quoting Barney v. Latham, 103 U.S. 205, 213 (1880).

Though 28 U.S.C. §1441 has been amended several times since these opinions were written, the holding is still sound. Dealing strictly with 28 U.S.C. §1441 as opposed to remand, precedent dictates that removal deals in quanta of cases, not parties or claims. See, e.g., Simmons v. California, Dep't of Industrial Relations, Div. of Labor Standards Enforcement, 740 F. Supp. 781, 785-86 (E.D. Cal. 1990); Priest v. Sealift Servs. Int'l, 953 F. Supp. 363, 363-34 (N.D. Ala. 1997); Flores v. Long, 926 F. Supp. 166, 168-69 (D.N.M. 1995); Johnson v. AT&T Technologies, Inc., 713 F. Supp. 885, 892-93 (M.D.N.C. 1989); Maseda v. Honda Motor Co., 861 F.2d 1248, 1251 (11th Cir. 1988); In re Princess Louise Corp., 77 B.R. 766, 769 (Bankr. C.D. Cal. 1987); Adolph Coors Co. v. Sickler, 608 F. Supp. 1417, 1425 (C.D. Cal. 1985); cf. Continental Casualty Co. v. Robsac Indus., 947 F.2d 1367, 1373 (9th Cir. 1991) ("To permit the present declaratory judgment action to proceed while there are non-diverse defendants in the state suit who are not parties to the federal action would be to sanction partial removal in all but name. We give considerable weight to the Congressional policy of 28 U.S.C. § 1441(b), and we cannot approve Continental's attempt to circumvent that policy"); Kruse v. Hawaii, 68 F.3d 331, 334-35 (9th Cir. 1995) (claims involving Eleventh Amendment immunity does not bar removal of action

but can be basis of remand for specific claims); but cf. <u>Charles D. Bonanno Linen Service, Inc. v. McCarthy</u>, 708 F.2d 1, 11 (1st Cir. 1983) (in case where entire case was removed, court remanded some claims stating, "it is proper here for the Local to remove Bonanno's 'arising under' and pendent claims against it to federal court, even if the other state claim defendants must be left behind").  As Avnet seeks to remove only part of the case to federal court, leaving claims against IBM in state court, removal on the basis of diversity jurisdiction fails.

**2. Expression Of Unanimous Defendant Consent**

As a related matter, Avnet's removal does not comply with the procedural requirements of 28 U.S.C. §1446.  When dealing with diversity jurisdiction, " the usual rule is that all defendants in an action in a state court must join in a petition for removal." <u>United Computer Sys. v. At&T Info. Sys.</u>, 298 F.3d 756, 762 (9th Cir. 2002), citing <u>Wisconsin Dept. of Corrections v. Schacht</u>, 524 U.S. 381, 393 (1998) (Kennedy, J., concurring).[4]  "[T]he Ninth Circuit has not yet addressed the question of the precise form a co-defendant's consent to join in removal must assume. However, while courts in this and other jurisdictions differ on the question of what constitutes evidence of consent, all courts require, at a minimum, that consent to removal be expressed directly to the court by the parties themselves." <u>Dubon v. HBSC Bank Nevada, N.A.</u>, No. 05-2799 SC, 2005 U.S. Dist. LEXIS 37290, at *6-7 (N.D. Cal., Sep. 15, 2005).  IBM did not express such consent to the court at the time the case was initially removed.  "Where fewer than all the defendants have joined in a removal action, the removing party has the burden under section 1446(a) to explain affirmatively the absence of any co-defendants in the notice for removal." <u>Prize Frize Inc. v. Matrix Inc.</u>, 167 F.3d 1261, 1266 (9th Cir. 1999).  Defendants who are "nominal, unknown or fraudulently joined parties" need not join the petition for removal.

---

[4]Lack of consent by all defendants does not defeat removal under bankruptcy jurisdiction as "by its plain language, section 28 U.S.C. § 1452 differs from 28 U.S.C. § 1441(a) in that the former permits 'a party' to remove a lawsuit to federal court while the latter permits removal by the 'defendant or defendants' in the case. Accordingly, the Court finds that all of the Defendants to this action were not required to join in the notice of removal." <u>Beasley v. Pers. Fin. Corp.</u>, 279 B.R. 523, 529 (S.D. Miss. 2002).

Emrich v. Touche Ross & Co., 846 F.2d 1190, 1193 n.1 (9th Cir. 1988). Avnet has not argued and the court has not found any evidence that this case falls under any of the exceptions.

Instead, Avnet argues "IBM was in agreement with the removal at the time of its filing with the Court. And IBM has since filed its separate written consent and joinder to the removal, erasing any doubt that could otherwise be raised that as a co-defendant, it consents to and joins in the removal." Doc. 13, Opposition, at 2:19-22. On June 29, 2006, IBM did indeed formally state in writing "IBM also consents to the Removal to United States District Court, Eastern Division filed by Avnet on June 1, 2006." Doc. 12, Notice of Joinder, at 2:9-10. Indeed, IBM clarified that "Counsel for [Avnet] contacted me before filing the Notice of Removal on June 1, 2006. At that time, I notified Avnet that IBM consented to removal." Doc. 18, Morgan Decl., at 2:8-10. The fact that IBM told Avnet it consented is of no import. As Dubon stated above, consent to removal had to be expressed directly to the court; discussion amongst defendants is insufficient.

At this point, it is too late for IBM and Avnet to remedy the mistake. "The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading." 28 U.S.C. §1446(b). Any defects in the removal notice, including lack of unanimity among defendants, must be cured within those 30 days. Prize Frize Inc. v. Matrix Inc., 167 F.3d 1261, 1266 (9th Cir. 1999) (The defects in the removal notice were not cured within the thirty-day statutory period permitted for joinder. Indeed, the record shows that defendant Micro Technology, Inc., attempted to orally join at a court hearing weeks after the thirty-day period had expired"). The first time IBM told the court that it consented to removal was on June 29, 2006. Doc. 12, Notice of Joinder. This case was initially filed in state court on May 1, 2006. While there is no firm record as to when IBM originally received the complaint, it appears certain that it was earlier than May 30, 2006 (30 days prior to June 29, 2006). As IBM and Avnet have not complied with 28 U.S.C. §1446(b), diversity jurisdiction can not be the basis upon which removal is justified.

**C. Costs Of Remand**

Courts have wide discretion in awarding fees and costs associated with motions for

remand. Moore v. Permanente Med. Group, Inc., 981 F.2d 443, 447 (9th Cir. 1992).  This case involves complex and unsettled law.  Under these circumstances, fees and costs will not be granted.

### D. Conclusion

The well-pleaded complaint rule does not apply to bankruptcy jurisdiction.  Nonetheless, Avnet has not met its burden of establishing subject matter jurisdiction by showing that this case is related to Amherst's bankruptcy.  In addition, Avnet's attempt to remove based on diversity jurisdiction fails due to remediless procedural errors.  Therefore, the court does not have subject matter jurisdiction in this case.

### IV. Order

Foster's motion to remand is GRANTED.  Costs are DENIED.  Based on the disposition of the motion to remand, Avnet's motions to dismiss and to transfer venue are rendered MOOT.

IT IS SO ORDERED.

**Dated:**   **July 31, 2006**              /s/ Anthony W. Ishii
h7ehd6                                    UNITED STATES DISTRICT JUDGE